# Exhibit 1



**WHOLESALE DISTRIBUTION AGREEMENT**

This Agreement is effective the 30th day of September, 2005 between AstraZeneca LP and AstraZeneca Pharmaceuticals LP, each with an address at 1800 Concord Pike, Wilmington, Delaware 19850, on the one hand, and

J M SMITH CORP - Smith Drug Company Division
**Customer Name**
(Hereinafter collectively referred to as "Buyer") with its main offices located at

9098 Fairforest Rd.
**Street**

Spartanburg                          SC                          29301
**City**                          **State**                          **Zip**

References to "Seller" in this Agreement mean (a) AstraZeneca Pharmaceuticals LP ("AZP") as regards to all goods or services identified by an AZP product code, labeler code or NDC number or (b) AstraZeneca LP ("AstraZeneca") as regards to all goods or services identified by an AstraZeneca product code, labeler code or NDC number. AstraZeneca is a sales agent for AZP and has authority to act for AZP in connection with the sale of AZP goods or services. In the absence of a product code, labeler code or NDC number for a particular good or service, Seller shall mean either AZP or AstraZeneca as expressly identified on the invoice as regards to such good or service. Seller represents that it is the U.S. distributor of certain prescription drugs and pharmaceutical products manufactured for Seller or any of its affiliates ("Product(s)").

Seller appoints Buyer as a non-exclusive distributor for its Products; and the parties hereto, in consideration of the foregoing premises hereto and the covenants of the parties hereinafter set forth and intending to be legally bound, hereby agree as follows:

Buyer represents and warrants that it is a wholesale distributor of healthcare products which has the capability to carry Seller's Products to meet the normal demands of Buyer's customers; which has appropriate temperature controlled and Drug Enforcement Administration ("DEA") approved facility or facilities to enable Buyer to store Seller's Products in accordance with label or other legal requirements; which is duly licensed as a wholesale distributor to sell and distribute prescription pharmaceuticals and biologicals; and which does not own or operate chain retail pharmacies as a significant portion of its business. It is understood that the transactions and relationships contemplated by this Agreement between Seller and Buyer relate solely to Buyer in its capacity as a wholesale distributor of healthcare products.

 AstraZeneca

## I.    SELLER AGREES TO:

### A. SUPPLY OF PRODUCT

Subject to availability and to the terms and conditions of this Agreement, sell to Buyer, as a wholesale distributor, its requirements of Products listed in the "Wholesale Cost Price List," incorporated herein by reference and attached hereto as Exhibit 1, as modified or updated by Seller from time to time, at the prices stated therein subject to the right of Seller to increase or decrease such prices upon written notice (including electronically and by facsimile) to and without consent of Buyer, and subject further to the terms of the Exhibits 2 and 3 attached hereto and incorporated herein by reference.

### B. TERMS

Invoice all Products shipped under this Agreement subject to a two percent (2%) cash discount for payment which is received by Seller pursuant to one of the following payment methods and under the corresponding terms:

   1.    For payment by check:
Two percent (2%) discount for payments received within thirty (30) calendar days from date of invoice, and net invoice amount due thirty-one (31) calendar days from the date of invoice, (2% 30 days, net 31).

   2.    For payment by Automated Clearing House Funds:
Two percent (2%) discount for funds transferred to Seller, where good funds will be available to Seller  on the 33rd day following the date of invoice, and net invoice amount due for fund transfers received any time after the 33rd day (2% 33 days, net 34).

For the initial stocking of those Products designated by Seller as new Products (hereinafter "New Products"), offer incentives which, at Seller's sole discretion, may include, without limitation, a stocking allowance and/or special terms to Buyer for a period of time to be determined by Seller in accordance with Seller's applicable New Product stocking program ("Stocking Program") in effect at the time, and which Seller may change from time to time in its sole discretion.

### C. SHIPMENTS, TRANSPORTATION, AND FREIGHT

   1. Assign Buyer's purchase order number to all shipments.

   2. Ship orders upon credit approval by Seller.

   3. Orders will only be accepted by Seller via Electronic Data Interchange (EDI) in a format acceptable to Seller (except for Schedule II Products).  Telephone and fax ordering capabilities will be available in case of emergency only.

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel       302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



4. Use commercially reasonable efforts to process and ship orders received by Seller during its normal business hours within one (1) business day following receipt by Seller of such order, unless said orders do not comply with the terms of this Agreement or contain errors or any irregularities which would prevent fulfillment of the order. Seller, however, shall incur no liability for failure to ship within one (1) business day.

5. Ship Dock-to-Dock orders only after receipt of the Health Identification Number ("HIN") or DEA number of the Buyer's customers. "Dock-to-Dock" orders as used herein shall mean those orders which are shipped to Buyer from Seller and which do not physically enter Buyer's inventory and which are packed and marked for direct transshipment from Buyer to Buyer's customer.

6. Ship to Distribution Centers of Buyer only in accordance with all other terms of this Agreement and Seller's Logistics Guidelines, incorporated herein by reference and attached hereto as Exhibit 2, as modified or updated by Seller from time to time, and in accordance with all other terms of this Agreement.

7. Deliver all Products for shipment to a common carrier satisfactory to Seller in accordance with Seller's Logistics Guidelines.

8. Proof of delivery will be provided by AstraZeneca Customer Service upon request. Proof of delivery shall be limited to a six (6) month period of time from the date of invoice.

9. Promptly notify Buyer of pricing changes in accordance with Seller's standard procedures.

D. BACKORDERS

Schedule II Product backorders will be canceled sixty (60) calendar days from the date of issue on the 222 form. All other Product backorders will be canceled thirty (30) calendar days after receipt of order.

E. RETURNS

1. Handle returns in accordance with Seller's applicable Return Goods Policy, incorporated herein by reference and attached hereto as Exhibit 3.

2. Seller reserves the right to modify its Return Goods Policies at any time upon written notification (subject to Section IV. B of the Agreement).

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel     302 886 3030
www.astrazeneca-us.com

AZPH1001  (01/00)



AstraZeneca

## II.   BUYER AGREES TO:

### A. PAYMENT

1. Except for any Authorized Deductions provided for herein, pay all invoices in full when due in accordance with their terms as specified in Section I. B. of this Agreement.

2. Reimburse Seller for all Invalid Deductions, for any cash discounts taken but not earned, and for any administrative charges for Unauthorized Deductions, as set forth in Section III, provided, however, that Seller provides written explanation to Buyer regarding (a) with respect to cash discounts, the reason such cash discounts taken were not earned and, (b) with respect to Unauthorized Deductions, the reason such deductions were deemed Unauthorized.

3. Make all payments in a form satisfactory to Seller.  Seller reserves the right, following fifteen (15) days notice to Buyer, to impose a late payment charge of 1.5 percent (18% per annum), or the maximum legal rate permissible by law, to be charged and assessed monthly until paid in full on any undisputed amount not paid when due.  No failure or delay by Seller to bill for any such late payment charge shall waive or otherwise affect Seller's right to assess or receive same. Buyer shall pay Seller on demand all costs and expenses, including, without limitation, court costs and expenses and reasonable attorneys' and paralegal fees incurred by Seller with respect to the enforcement, collection, or protection of its rights hereunder.

### B. ANNUAL PURCHASES AND MINIMUM ORDERS

Purchase from Seller an annual minimum of $2,000,000 of Seller's Products and purchase minimum of $15,000 per order (excluding Emergency Orders as defined in Section II.D. below).

### C.   SHIPMENTS AND FREIGHT

1. Pay those freight costs and service charges, which are not paid by Seller, pursuant to this Agreement.

2. Unless otherwise agreed to by Seller, pay the costs for shipment by any means designated by Buyer if other than the means of shipment then designated by Seller.

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel    302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



3. Pay any storage and/or redelivery charge incurred by Seller as a result of Buyer's refusal of any shipment which was made against a valid purchase order and shipped according to the terms of this Agreement.

D.   ORDERING

1. Place orders in full case increments except for those specific Products so identified and listed in Exhibit 1 as not requiring full case orders.

2. Place a maximum of no more than two (2) orders per week for delivery to each of Buyer's approved ship to locations, excluding Schedule II Products orders.

3. Transmit orders direct to Seller via EDI using ANSI X12 formats (except for Schedule II Products) so as to allow such orders to be shipped within the next two (2) business days in accordance with Section I.C.4.

4. Transmit all orders via EDI, except as follows:

   • Orders for New Products, or Product line extensions, including new strengths, or sizes, which Buyer places pursuant to the applicable New Product Stocking Program, which Seller may announce from time to time.

   • Seller-authorized Emergency Orders.  For the purposes of this Agreement, any order that requires expedited shipping shall be an "Emergency Order". With respect to Emergency Orders that are not the direct result of Seller's failure to ship an order properly transmitted by Buyer in a timely manner, such Emergency Orders shall be limited to one (1) per month per location and  shall either be placed in writing or, if by telephone, confirmed by fax (with notation as "confirming order") at the time order is placed.  Seller reserves the right to charge Buyer for all freight charges incurred for Emergency Orders.  In addition, Buyer shall pay an Emergency Order processing fee in the amount of $100 for each such order; and

   • Schedule II Products must be ordered using DEA Form 222, or such other electronic process as Seller may implement.

E.   DIRECT PURCHASES

Buyer agrees to purchase and distribute Products that are only obtained directly from AstraZeneca LP or AstraZeneca Pharmaceuticals LP.  In the event of Buyer's failure to comply with this provision, Seller may terminate this Agreement pursuant to Section IV.E.(ii).

F.   INVENTORY AND PROPER HANDLING

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel        302 886 3090
www.astrazeneca-us.com

AZPH1001  (01/00)

 AstraZeneca

1. Maintain inventories of Seller's Products, including controlled substances, to meet the normal demands of Buyer's customers.

2. Provide proper facilities for Seller's Products, including but not limited to the storage and distribution of controlled substances and temperature controlled products, taking into consideration the character of such Products, and observe special directions or requirements of Seller or other regulatory body, if any, concerning the storage and distribution of particular Products, including but not limited to temperature control and stock rotation to minimize the expiration of dated items.

3. Keep possession and control over the Products.

G.   RETURNS AND RECALLS

1. Abide by the current applicable AstraZeneca Return Goods Policy attached hereto as Exhibit 3, and subject to modification pursuant to Sections I. E. and IV. B. herein.

2. Take all necessary steps to assure that all products returned by Buyer and Buyer's customers are Seller's U.S. Products bearing Seller's 11 digit National Drug Code number as assigned by the U.S. Food and Drug Administration.

3. **Schedule II.** Contact Seller's returned goods processor at the number set forth in Exhibit 3 to obtain a DEA Form 222. Provide the processor with a complete list of items for return including NDC number and quantity. Schedule II Products should be packaged in a separate box inside of the main shipping carton. If shipping only Schedule II Products, ship in an unmarked container via common carrier. Small quantities may also be shipped via US registered mail, return receipt requested. Schedule II Products may also be sent directly to the local DEA office for destruction. (Check with your local DEA office for policy.) Seller will require a copy of the Form 41 from the local DEA office and a copy of the customer's in-date Certificate of Registration before credit will be considered.

4. **Product Recall and Inquiries.** In the event of a general recall or a limited recall whether initiated by the Food & Drug Administration or voluntarily on the part of Seller or any other party (a "Recall") of which Buyer becomes aware, the Buyer shall promptly notify, and cooperate with, Seller with regard to such Recall in order to ensure that Seller is made aware of the scope and nature of the Recall. In the event of a Recall, Buyer will provide those services and assistance requested in writing by Seller in connection with the Recall. Buyer shall be instructed by Seller where all Products included in a Recall are to be returned. To ensure proper credit for Products returned, Buyer shall submit separate debit memos for the returned Recall Products and Recall fees as set

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1001 (01/00)



**AstraZeneca**

forth in this Agreement. To the extent Seller has initiated the Recall, either voluntarily or at the request of FDA, Buyer will be reimbursed (per HDMA Suggested Allowance Formula For Product Recalls and Withdrawals) for those services and assistance requested by Seller at the time of the Recall announcement. These services requested by Seller may include, but are not limited to:

a) Development and production of recall notification materials.
b) Assistance in the identification, location and verification of recalled Products.
c) Prompt performance of any requested search and pickup services.
d) Immediate response to inquiries from Seller, FDA, and state and local regulatory agencies.

In the event of any Product safety or quality inquiry in which Buyer is involved or becomes aware, whether from the Food & Drug Administration, state agencies or from any other third party, Buyer will promptly notify Seller of such inquiry and Buyer shall allow Seller the opportunity, if requested, to review, participate or to assist in the response to any inquiries.

Buyer shall use reasonable commercial efforts to ensure that any contract or subcontract entered into by Buyer with respect to the Product shall include a requirement for the contracting party to provide notice, services and assistance to Seller as provided in this paragraph G. 3.

H.   SERVICES

1. Use its best efforts to implement all terms of Seller's promotions. It is understood that Seller will publicize to Buyer's customers such suggested promotions.

2. In conjunction with Seller, determine Buyer's appropriate stocking requirements for Seller's New Products in order to supply Buyer's customer demand, and authorize an initial order for the New Product sufficient to achieve agreed stocking goals and sufficient inventory to anticipate initial demand with proper regard to Seller's New Product introduction schedule.

3. Provide HIN or DEA number for all orders.

I.   NOTIFICATION

Notify Seller of any transfer in majority ownership or control, or of any changes in address as soon as practicable but no later than five (5) business days after such action, at the address set forth in Section IV.G. below. At Seller's option, this Agreement may be terminated on written notice to Buyer upon the effective date of such sale or transfer or upon such other date as is provided in the notice of

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel       302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)


AstraZeneca

termination.  In addition, if Buyer shall fail to notify Seller pursuant to the provisions of this section, Seller may terminate this Agreement effective as of the date of a transfer or sale or upon such other date as Seller shall determine.

J.    COMPLIANCE

Comply with all United States federal, state, and local laws, regulations, and ordinances relating in any way to the business of Buyer, the purchase, sale, distribution, storage and handling of pharmaceutical products, and the transactions hereunder, including but not limited to the terms of the Prescription Drug Marketing Act of 1987 (21 USC 353 et seq.), any regulations promulgated thereunder, and any amendments thereto.

K.    FINANCIAL STATEMENTS AND CREDIT TERMS

Provide to Seller upon request yearly financial statements, audited or prepared by an independent certified public accounting firm and signed by an officer of the corporation.  Seller reserves the right at all times to limit or terminate credit terms and to modify its terms of sale pursuant to Section IV, provided, however, that if such modifications are less favorable to Buyer than those terms contained in this Agreement or currently in effect, as the case may be, then Buyer may terminate this Agreement upon seven (7) business days prior written notice to Seller.


### III.    CLAIMS MANAGEMENT

L.    DEFINITIONS

1.  "Authorized Deduction" means any deduction taken by Buyer against Seller's invoice in compliance with the provisions of this Agreement or as otherwise explicitly authorized in writing by Seller.

2.  "Claims" means all requests by Buyer, by means of a debit memo or otherwise, for credit against payment due to Seller.

3.  "Invalid Deduction" means any deduction, whether authorized or not authorized by Seller, taken by Buyer against Seller's invoice, that is determined by Seller to be incorrect, invalid, improperly taken or otherwise not due to Buyer.

4.  "Unauthorized Deduction" means any deduction taken by Buyer against Seller's invoice that is not expressly permitted by the terms of this Section III.


M.    NOTIFICATION

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel     302 886 3000
www.astrazeneca-us.com

AZFH1001  [01/00]


**AstraZeneca**

1. Buyer shall notify Seller's Customer Service Department of all non-concealed discrepancies with respect to a shipment within five (5) business days of receipt of the shipment. The parties recognize that there may be extraordinary circumstances (e.g. fire) at Buyer's facility or within Buyer's organization whereby the five (5) business day notice provided for herein is not feasible to give, and in such event, Buyer will promptly notify Seller and the parties will agree to a reasonable adjustment of the timeframe within which to provide notice hereunder (provided such adjusted notice period shall in no event exceed thirty (30) calendar days).

2. Buyer shall notify Seller's Customer Service Department of all concealed discrepancies with respect to a shipment as soon as possible, but in any event not more than thirty (30) calendar days after receipt of the shipment. For purposes of this section, concealed discrepancies shall mean manufacturer shortage(s) or damage(s) which is discovered by Buyer in Product delivered in sealed manufacturer cases or shortage(s) or damage(s) which is later discovered by Buyer in Product which is part of a single NDC shrink wrapped pallet Seller shipment.

3. Buyer shall notify Seller's Customer Service of any discrepancies with respect to an invoice within five (5) business days of receipt of invoice or receipt of Product, whichever is later. If notified within five (5) business days, and discrepancy is agreed upon by both parties, Seller will then issue the appropriate documentation to correct the discrepancy amount.

### N.   CLAIMS PROCESSING

1. Buyer shall notify Seller of any claims by written debit memo unless a debit memo is not required (see Exhibit 4), or by such other process as may be mutually agreed upon (e.g. EDI submission of hospital chargeback claims). Upon claim review and approval as described herein, Seller will issue a credit memo to Buyer. With the exception of Seller initiated credit memos, or as otherwise provided herein, Buyer shall make no adjustments to or take Unauthorized Deductions from invoices. The following processes apply with respect to shipping errors, Product damaged in transit, shortages or pricing errors:

   • Shipping Error (wrong product, wrong quantity (overage)) – Buyer shall notify Seller within five (5) business days from receipt of any Product shipped to Buyer in error, including any unbilled overages. If Buyer does not wish to keep the Product, Buyer will notify Seller, and Buyer will return the Product to Seller following Seller's instructions. The Products will be returned at Buyer's expense if the error was due to the fault of Buyer and at Seller's expense if the error was due to the fault of Seller. Seller will

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE  19850-5437

Tel       302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



authorize credit within fifteen (15) calendar days following Seller's receipt of such Product returned in accordance with Seller's instructions. Seller may elect to credit the original invoice and re-invoice the shipment or issue credit for the properly returned overage which credit may be applied against payment of the original invoice or any other invoice subsequently issued by Seller. If Buyer wishes to keep the Product, Seller will invoice the Buyer for said Product within five (5) calendar days of Buyer's notification to Seller.

- Damages - Buyer will notify Seller of damages as soon as possible, but in no event more than five (5) business days after receipt, and Buyer will return the Product to Seller following Seller's instructions. The Products will be returned at Buyer's expense if the damage was due to the fault of Buyer and at Seller's expense if the damage was due to the fault of Seller or the carrier. Seller will authorize credit within fifteen (15) calendar days following Seller's receipt of such returned Product.

- Shortages (due to carrier loss or shipping error) - Buyer will promptly notify Seller of any shortage claims within five (5) business days after Buyer's receipt of shipment. Once notified by Buyer, Seller may require up to fifteen (15) calendar days to investigate and authorize Buyer's shortage claims for credit. If Buyer's shortage claim is not authorized by Seller, Seller will provide to Buyer written documentation supporting Seller's refusal to honor Buyer's shortage claim.

- Pricing Error - Buyer will promptly notify Seller of any pricing errors by issuance of a debit. Seller will authorize any corrections (as warranted) or deny the claims within fifteen (15) calendar days following notification by Buyer.

2. Seller shall issue credit memos for Products returned in accordance with Seller's Return Goods Policy, within twenty-five (25) calendar days following Seller's receipt of such returned Products at Seller's Return Goods Processor sites.

3. To the extent that Buyer is authorized to submit claims (Chargebacks) pursuant to the terms of a Wholesaler Prime Vendor Agreement entered into by Buyer and Seller, Buyer's submission of such claims shall be subject to the terms and conditions set forth in such Wholesaler Prime Vendor Agreement. For the purposes of this Section III, any deductions taken by Buyer in connection with such Chargebacks shall be determined to be Authorized Deductions, Unauthorized Deductions or Invalid Deductions based on their compliance with the terms and requirements of such Wholesaler Prime Vendor Agreement.

4. Upon receipt of a debit memo, Seller shall use its best efforts to issue a credit memo or written denial within the time periods provided for in this Section III. In the event that Seller fails within such time periods to issue a credit memo or

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel       302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



**AstraZeneca**

deny in writing a debit memo received from Buyer, Buyer is authorized to take a deduction for such amount. Any such deduction is subject to Seller's approval. In the event that Seller does not approve the deductions, or deems all or some portion invalid, Seller will bill back for such amount(s) and Buyer shall promptly make payment thereof

5. Except as expressly provided in this Section III. C., Buyer shall take no other deductions from the invoices, including post-audit claims and deductions (post-audit claims defined for these purposes as claims made eighteen (18) or more months after the transaction(s) to which they relate.


D.   UNAUTHORIZED DEDUCTIONS

1. Any deductions taken by Buyer that are not expressly provided for herein will be Unauthorized Deductions, including but not limited to the following:

   - Deductions taken more than seven (7) calendar days post credit memo receipt;
   - Deductions taken prior to close of Seller's claim processing windows as established herein (see also Exhibit 4), to include:
     o Deductions taken for returned Product not yet received
     o Deductions taken where Seller has not received a debit memo, unless no debit memo is required (see also Exhibit 4);
   - Invalid deductions not repaid within the billed terms or fifteen (15) calendar days, whichever is greater

2. Seller shall issue debit memos for cash discounts taken but not earned, correction of shipment and billing errors, and for any shipping charges to be paid by Buyer, within five (5) calendar days of Seller's authorization of such debit.


E.   CLAIMS PROCEDURES

In order to facilitate the claims management process set forth in this Section III, Buyer agrees to:

1.   Issue written debit memos to Seller at the address below for all non hospital chargeback related claims: AstraZeneca Pharmaceuticals, Credit Services-A1C, P.O. Box 15437, Wilmington, DE, 19850-5437.

2.   Repay Unauthorized Deductions in full contemporaneously with Seller's related credit memo(s).

3.   In the event of a Product Recall, issue a separate debit memo for returned Product and Recall fees, respectively.

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



4.   Except with respect to Chargebacks as provided in an effective Wholesaler Prime Vendor Agreement, refrain from issuing additional debit memos for minor variances between Buyer's original debit memo and Sellers related credit memo(s) unless such variance exceeds $500.

5.   Honor the processing windows established in Section III.C. prior to initiating deductions against Seller's invoices. If Buyer mixes claim types on a single debit memo, Seller will be entitled to use the longest applicable processing window for the purpose of determining if a subsequent deduction is authorized.

6.   Without waiving any rights or remedies available to either party at law or in equity, in the event that Buyer in good faith disputes Seller's denial of Buyer's claim, and so notifies Seller within seven (7) calendar days following Seller's denial of such claim, Buyer and Seller shall reasonably cooperate to resolve such dispute in accordance with a dispute resolution procedure to be mutually agreed upon by Buyer and Seller.


F.  SELLER'S REMEDIES

1.   In addition to and without limitation on any and all other remedies available to Seller at law or equity, in the event that Buyer fails to comply with the claims management process as set forth herein by taking any Unauthorized Deduction(s), Seller will assess an administrative charge equivalent to one percent (1%) of the amount of each Unauthorized Deduction; provided, however, that such administrative charge shall in no instance be less than $100.

2.   Without limiting the foregoing, Seller reserves the right to suspend some or all of Buyer's credit line privileges if an Invalid Deduction is not repaid within thirty (30) calendar days.  In the event that there are Invalid Deductions taken that, when aggregated, amount to more than two percent (2%) of the total outstanding balance of receivables with respect to Buyer, Seller shall have the right to terminate this Agreement in accordance with Section IV.E. of this Agreement.


## IV. GENERAL PROVISIONS

A.  All orders transmitted to Seller by Buyer are subject to acceptance only at Seller's headquarters.

B.  Seller may, by written notice to Buyer, effective upon the date of mailing of such notice (with the exception of orders already received from Buyer), modify this Agreement with respect to prices, quantities, payment terms, cash discount terms,

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel     302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



shipping terms, title and risk of loss terms, Return Goods Policy, addition or deletion of Products from Exhibit 1, or any other particulars consistent with Seller's general terms and conditions from time to time established. In the event that Buyer fails to agree to any modifications, Seller may terminate this Agreement upon seven (7) calendar days written notice to Buyer. In the event that any modifications are less favorable to Buyer than those terms contained in this Agreement, or currently in effect, as the case may be, then Buyer may terminate this Agreement upon seven (7) calendar days written notice to Seller. For any order transmitted by Buyer prior to mailing of such notification by Seller and subsequently received, Buyer shall have the option to cancel such order or have it filled pursuant to the amended terms and conditions. Notice of modification may be in the form of revised Distribution Agreement, Price List, or any other written notice which specifies an effective date.

C. This document, the Wholesaler Prime Vendor Agreement, and the exhibits hereto and thereto constitute the entire Agreement between the parties and supersede and terminate any prior or contemporaneous agreements, oral or written, concerning the subject matter. The terms and conditions hereof and thereof shall govern exclusively all sales made hereunder and thereunder. It is intended by the parties that the relationship hereby created is that of Buyer and Seller, and neither party is deemed an agent of the other for any purposes. It is not intended that any franchise or exclusive dealing arrangement be created.

D. Except as provided in Section IV. B. above no modification of this Agreement shall be effective unless in writing and signed by an authorized person on behalf of the party to be charged. No additional terms are to be implied by trade usage or course of performance except where such terms are used in this Agreement or incorporated by reference from the annexed Wholesale Cost Price List (Exhibit 1).

E. The parties may terminate the Agreement as follows:

    (i)    Either party may terminate this Agreement with or without cause by giving thirty (30) calendar days written notice. Any monies due hereunder at the effective date of such termination shall be paid in accordance with the terms of this Agreement;

    (ii)    In the event either party shall default under this Agreement subject to the other rights of termination provided in this Agreement, the other party may, without prejudice to any other remedy, terminate this Agreement immediately, and any failure by said other party to exercise any such right with respect to any particular default shall not be deemed to constitute a waiver with respect to any subsequent default

    (iii)    Either party may terminate this Agreement immediately in the event that (a) the other party ceases to do business in the ordinary course, (b) the other party becomes or is declared insolvent or bankrupt, (c) the other party is the subject of any proceeding related to its liquidation or insolvency, which proceeding, if involuntary, is not dismissed within ninety (90) calendar days,

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel    302 886 3000
www.astrazeneca-us.com

AZPH1001 (01/00)

 **AstraZeneca**

(d) the other party makes an assignment for the benefit of its creditors, (e) in the case of Buyer, Buyer fails to make payment on the date due;and

(iv) Seller may terminate this Agreement in the event that Buyer (a) transfers its business or substantially all of its assets by operation of law or otherwise, or (b) there is a change of ownership of the controlling interest of Buyer, whether by merger, consolidation or otherwise. Buyer shall notify Seller of any transfer in or change of majority ownership or control, merger, consolidation, transfer or sale of assets or business by operation of law or otherwise, or of any changes in address, or if any other event referenced in the preceding sentences of this Section E shall occur, as soon as practicable but no later than five (5) business days after such action, at the address set forth in Section IV.G. below. At Seller's option, this Agreement may be terminated on written notice to Buyer upon the effective date of such sale or transfer or upon such other date as is provided in the notice of termination. In addition, if Buyer shall fail to notify Seller pursuant to the provisions of this section, Seller may terminate this Agreement effective as of the date of a transfer or sale or upon such other date as Seller shall determine.

In the event of termination by Seller pursuant to IV.E. (ii), (iii) or (iv) above, in addition to all other remedies available to Seller, Seller may declare all outstanding amounts payable pursuant to the terms of this Agreement immediately due and payable.

Any failure by either party to exercise any right with respect to any particular default shall not be deemed to constitute a waiver with respect to any subsequent default. Any monies due hereunder at the effective date of termination shall be paid in accordance with the terms of this Agreement.

F. Upon acceptance at Seller's headquarters by an authorized representative, this Agreement shall become effective on the effective date first written above.

G. The addresses to which all correspondence, orders, and other notices relating to this Agreement shall be sent are as follows:

For Seller's attention:
AstraZeneca LP
Customer Relations and Services
1800 Concord Pike
PO Box 15437
Wilmington, DE 19850-5437
Fax: (302) 886-8035

For Buyer's attention:
Smith Drug Company
P. O. Box 1779
Spartanburg, SC  29304
Attn: William L. Brice
Fax: 800-599-0415

AstraZeneca Pharmaceuticals LP
Customer Relations and Services
1800 Concord Pike
PO Box 15437

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel        302 886 3040
www.astrazeneca-us.com

AZPH1001  (01/00)



**AstraZeneca**
Wilmington, DE 19850-5437
Fax: (302) 886-8035

With a Copy to:
Ann V. Booth-Barbarin
Legal Department
AstraZeneca Pharmaceuticals LP
1800 Concord Pike
PO Box 15437
Wilmington, DE 19850-5437
Fax: (302) 886-2459

Except as otherwise agreed, either party may change its notice address by giving at least ten (10) business days prior written notice to the other party. Any notice, request, demand, waiver, consent, approval or other communication which is required or permitted to be given under this Agreement shall be in writing and shall be deemed given if delivered personally or sent by telegram or facsimile (with transmission confirmed) or by certified or registered mail, return receipt requested with postage prepaid, or by Federal Express or an equivalent overnight delivery service, addressed to the parties at their respective addresses listed above. Such notice, request, demand, waiver, consent, approval or other communication shall be deemed to have been given as of the date so personally delivered, telegraphed or telecopied, or on the fifth day after deposit in the United States mail, or on the second day after deposit with Federal Express or an equivalent overnight delivery service.

H. Title and risk of loss for all Products sold hereunder shall pass to Buyer as provided, and all shipping, freight and insurance terms shall be as set forth, in Exhibit 2 attached hereto.

I. In the event Seller shall have reason to doubt Buyer's financial responsibility, Seller shall have the right to decline making further deliveries except for cash or satisfactory security.

J. The parties shall not be subject to any liability for delay in performance, or nonperformance, as a result of fire, flood, strike, labor trouble, accident, riot, act of governmental authority, act of God, or other contingencies and circumstances beyond their control interfering with the production, supply, transportation, or consumption of the materials covered by this Agreement or with the supply of any raw materials used in connection therewith, and quantities so affected may be eliminated from the Agreement without liability, but the Agreement shall otherwise remain unaffected. Further, Seller shall not be liable for delay in performance, or non-performance in the case where Seller's Products are out of stock for any reason. Seller may, during any period of shortage due to said causes, prorate its supply of such materials among its accepted orders and contract customers in such manner as may be deemed reasonably equitable by Seller.

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3080
www.astrazeneca-us.com

AZPH1001 (01/00)



K. Buyer shall reimburse Seller for all taxes, or other charges, except income and franchise taxes, which Seller may be required to pay to any government, whether national, state, or local, upon the sale or transportation of the Product sold hereunder, now in effect or which may be imposed or increased subsequent to the effective date of this Agreement upon presentation of appropriate evidence of such amounts due.

L. Seller warrants only that each article shipped by it hereunder will not, on the date of shipment, be adulterated or misbranded within the meaning of Section 303 (c) of the Federal Food, Drug and Cosmetic Act, or within the meaning of any applicable state or municipal law in which the definitions of "adulteration" and "misbranding" are substantially the same as those contained in said Federal Act, as such laws are constituted and effective at the time of such shipment or delivery, and will not, on the date of shipment, be an article which may not under the provisions of Sections 404 and 505 of said Federal Act be introduced into interstate commerce. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND SELLER EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. Buyer shall inspect the Product immediately after delivery, and any claims by Buyer that the Product as delivered is less than the quantity ordered or not as warranted herein shall be waived unless made in writing within five (5) business days after delivery (or such other time limit established by Seller for a specific Product(s)). Buyer's exclusive remedy and Seller's sole liability hereunder shall be limited to a refund of the purchase price, or replacement of all Product shown to be otherwise than as warranted or deficient in quantity, and Seller shall not be liable for indirect or consequential damages or otherwise.

M. Indemnification.

By Seller  (a)  Except as set forth below, Seller agrees to defend, indemnify and hold harmless Buyer and its officers, directors, employees ("Buyer Indemnified Parties) from and against any and all liability, claims, losses, damages and expenses (each a "Loss" and collectively, "Losses") for bodily injury or death incurred by a third party which are directly caused by the use of the Product(s) purchased by Buyer under this Agreement and distributed by Buyer pursuant to this Agreement directly to a retailer if Buyer has complied with the terms and provisions of this Agreement including without limitation those provisions relating to indemnification, provided however, this provision shall not apply to the extent that the Loss or Losses are caused by Buyer's or a Buyer Indemnified Party's negligence or willful misconduct or the failure of a Buyer Indemnified Party to perform its obligations under this Agreement. Seller shall have the exclusive right to retain counsel of its choosing to represent Buyer and shall retain exclusive control of the litigation, including, without limitation, the right to make any compromise or settlement, provided that Seller shall not make any settlement admitting fault on the part of Buyer without written consent, such consent not to be unreasonably withheld.

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



(b)     Buyer shall promptly provide Seller with written notice of the possibility of a Loss upon learning of any events which could give rise to such Loss or the receipt of any claim or suit with respect thereto, whichever is earlier, provided that Seller shall not be responsible for any Loss, or any increase in any Loss, resulting from any delay by Buyer in providing such notice.  The Buyer shall allow Seller to assume the defense of any such Loss, including the right to select defense counsel and the right to settle any Loss as set forth above, and shall cooperate fully with Seller and its agents and representatives in the investigation and defense of such Loss.

By Buyer  (a)     Buyer shall defend, indemnify and hold harmless Seller and its officers, directors, employees and agents ("Seller Indemnified Parties") from and against any and all Losses caused by a breach of this Agreement by Buyer, including, without limitation, the negligence or willful misconduct of Buyer in performing its obligations under this Agreement or caused by the failure of Buyer to comply with the provisions of this Agreement.  Notwithstanding the foregoing, Buyer shall have no obligation pursuant to this Agreement to defend, indemnify or hold harmless a Seller Indemnified Party from any Losses to the extent caused by a breach of this Agreement by a Seller Indemnified Party, including by such party's negligence or willful misconduct.

(b)  Seller shall promptly provide Buyer with written notice of the possibility of a Loss upon learning of any events which could give rise to such Loss or the receipt of any claim or suit with respect thereto, whichever is earlier, provided that Buyer shall not be responsible for any Loss, or any increase in any Loss, resulting from any delay by Seller in providing such notice.  Seller shall cooperate fully with Buyer and its agents and representatives in the investigation and defense of such Loss.

N. Except to the extent attributable to Buyer's negligence or willful act, including but not limited to designs or materials specifications provided by Buyer, Seller agrees to defend, indemnify and hold Buyer harmless from and against any and all claims, liabilities, losses, damages, costs and expenses (including without limitation, reasonable attorneys' fees) which arise or result from Seller's infringement of any third party's intellectual property (including patent, trademark, service mark, copyright, trade dress, trade secret and other proprietary rights) in connection with Buyer's distribution of Products purchased by Buyer directly from Seller in accordance with Section II.E above.  Buyer shall give Seller prompt notice of any such action brought against Buyer and permit Seller, at its option, to defend such suit.

O. This Agreement and performance hereunder shall be construed and interpreted according to the laws of the State of Delaware without giving effect to principles of conflicts of law applicable therein.

P. Seller may terminate this Agreement immediately without notice if it is determined that Buyer has purchased any Products from any other source other than Seller.

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel     302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)



Q. This Agreement is not assignable or transferrable whether by operation of law or otherwise by either party except with written consent of the other party. Notwithstanding the foregoing, Seller reserves the right to assign or transfer this Agreement by operation of law or to any of its affiliates or in connection with the sale of substantially all its assets without the consent of Buyer.

R. Nothing contained in this Agreement shall be construed as creating a partnership, joint venture, franchise of agency relationship between the parties.

S. Buyer shall maintain complete and accurate records of all transactions with Seller under the terms of this Agreement for seven (7) years or such longer period as may be required to comply with law. Buyer shall provide to Seller upon Seller's request all such records, including relevant electronic record and records establishing Buyer's compliance with the requirements of this Agreement, including but not limited to compliance with Section II.E. Such records shall not include Buyer's customer sales information. In addition, during the term of this Agreement, upon thirty (30) days prior notice, at its own expense and during normal business hours, Seller and/or its designee shall have the right at least once per year during the term of this Agreement, and for a period of one (1) year thereafter, to audit and inspect those relevant records which are maintained by Buyer in direct connection with its performance under this Agreement; provided, however, the audit or inspection shall be performed by a party under an obligation of confidentiality comparable to the confidentiality requirements of this Agreement.

T. Buyer shall allow Seller and/or its designee, at Seller's expense, upon forty-eight (48) hours prior notice, to perform physical inventory audits at Buyer's locations at any time during normal business hours for the purpose of confirming that all of Seller's Products held by Buyer have been purchased by Buyer from Seller in accordance with the terms of this Agreement. Buyer may, at its own cost, participate in such audits.

U. Buyer and Seller agree to keep confidential all information pertaining to the terms and conditions of this Agreement, including the prices set forth in Exhibit 1 hereto. All documents and other information provided to the other party pursuant to this Agreement, including any information concerning prices, quantities purchased by any customer, or other terms and conditions, shall be held by the other party in strict confidence and not disclosed either directly or indirectly to any third party during the term of this Agreement and for five (5) years thereafter. However, information generated, compiled or stored by Buyer reflecting the purchase and resale of Products to its customers does not constitute the confidential information of Seller, and Buyer will be entitled to utilize all such information in any manner deemed appropriate by it. Seller understands and agrees that Buyer may, in its sole discretion, elect to sell warehouse withdrawal, sales, and other data to IMS/DDD and/or other third parties without contribution to Seller. In the event of a violation of this covenant, without limiting any of its remedies available at law or in equity, a party shall be entitled to obtain injunctive relief to prevent the other party from further violating this covenant.

Wholesale Distribution Agreement11.doc

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike PO Box 15437 Wilmington DE 19850-5437

Tel        302 886 3080
www.astrazeneca-us.com

AZPH1001 (01/00)



V. Seller may in its sole and absolute discretion, from time to time, establish credit limits with regard to Buyer's purchases from Seller.  In the event of a cessation of Buyer's credit limits, Seller shall inform Buyer of such changes.   Seller's reduction or cessation of Buyer's credit limit shall not constitute a breach of this Agreement by Seller and shall not otherwise give rise to any claims by Buyer.  In the event of a cessation of any credit limit by Seller, Seller will promptly advise Buyer of any acceptable substitute credit arrangement, if any, that may be applicable as determined in Seller's sole discretion.

W. Compliance with Laws. Without limiting the other provisions expressly contained in this Agreement regarding compliance with laws, each party shall comply in all material respects with all applicable federal, state and local laws and any regulations promulgated thereunder which are now or hereafter become applicable to its operations and the performance of the obligations under this Agreement.  Buyer also represents and warrants that it will not sell or distribute any of the Products to any customer or other third party known by Buyer not to comply with all laws and regulations applicable to its operations.

X. Severability.  If any provision in this Agreement is found or held to be invalid or unenforceable, then the meaning of said provision shall be construed, to the extent feasible, so as to render the provision enforceable, and if no feasible interpretation would save such provision, it shall be severed from the remainder of this Agreement which shall remain in full force and effect unless the severed provision is essential and material to the rights or benefits received by either party.  In such event, the parties shall use their best efforts to negotiate, in good faith, a substitute, valid and enforceable provision or agreement that most nearly reflects the parties' intent in entering into this Agreement.

Y. Insurance. The parties shall maintain such insurance as is necessary to cover claims associated with this Agreement.  Maintenance of such insurance coverage shall not relieve such party of responsibility under this Agreement for liability in excess of insurance limits or otherwise.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)


AstraZeneca

The parties, by signature of their authorized representatives below, agree to the terms and conditions of this Agreement.

(BUYER)

By _____

Name __Kenneth R. Couch__

Title ____President____

HUN Number ____PS0001723____

Date ____8/19/05____


AstraZeneca LP

By _____

Name _Edward F. Kelso_

Title _Sr. Director CRaS_

Date __9-28-05__


AstraZeneca Pharmaceuticals LP

By _____

Name _Edward F. Kelso_

Title _Sr. Director CRaS_

Date __9-28-05__


Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1801 (01/00)



**EXHIBIT 1**

Wholesale Cost Price List

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel        302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)


AstraZeneca

## EXHIBIT 2

## LOGISTICS GUIDELINES

All Shipments of product by AstraZeneca LP or AstraZeneca Pharmaceuticals LP (each a "Seller") to _Smith Drug Company_ (Buyer) Warehouses will be subject to the following conditions:

1. Seller agrees to accept orders for shipment to each of Buyer's Warehouses as per Section I.C.3.

2. Seller will use a Seller-selected and approved carrier for all shipments. Seller agrees to pay the freight charges. Title to all product shipped passes to Buyer FOB destination with freight and insurance allowed.

3. The following information will be provided with each shipment:

    a. A Bill of Lading (BOL) will be provided to the carrier for each Purchase Order. Carrier will be required to sign the BOL, indicating that the materials being shipped are properly classified, described, packaged, marked and labeled, and in proper condition for transportation, according to the applicable regulations of the Department of Transportation, prior to leaving Seller's dock. Information on the BOL will include:

       Carrier
       Seller's name and address
       Buyer's name and address of the destination Warehouse
       Buyer's Purchase Order number
       Date of Shipment
       Shipping terms (FOB destination and freight terms)
       Shipper's number
       Number of cases, pallets and/or overpacks being shipped, as applicable
       Gross weight of the shipment
       General Description of the product being shipped (ie, Drugs NOI)

    b. A Packing List accompanying the shipment will be provided to Buyer for each Purchase Order. Information on the Packing List will include:

       Carrier
       Seller's name and address
       Buyer's name and address of the destination Warehouse
       Buyer's Purchase Order number
       Date of Shipment
       Shipping Terms (FOB destination and freight terms)
       Shipper's number
       Product description, NDC and lot number of each product being shipped
       Quantity (cases and units) of each product being shipped
       Gross Weight of each product being shipped, as well as a total for the shipment
       Number of pallets or overpacks being shipped

**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel        302 886 3000
www.astrazeneca-us.com

AZPH1001 (01/00)


**AstraZeneca**

   c. The following information will be shown on each case of product:
   
   Product name and description
   NDC
   Lot Number
   Expiration Date
   Package Size (units per case, unit size)
   Temperature Storage Statement
   "Manufactured For" Statement
   Country of Manufacture
   Bar Code of Product NDC (I 2 of 5 format)

4. LTL and Truckload Shipments:  Before accepting Product from the transportation company, Buyer shall conduct a visual inspection of each shipment to ensure that shrink wrap is in place and to account for the number of pallets indicated on the Carrier Delivery Receipt.

   Small Parcel Shipments:  Before accepting Product from the transportation company, Buyer shall conduct a visual inspection of each shipment to account for the number of cases or pallets (whichever is applicable) indicated on the Carrier Delivery Receipt.

   For all shipments received, Buyer shall accept delivery of the shipment, including any damaged or unusable Product, unless the entire shipment is damaged or unusable, in which event Buyer shall reject the entire shipment for carrier's return to Seller.  Buyer shall notify Seller's Customer Service Department in accordance with the requirements of the Wholesale Distribution Agreement of any shortage, damage and/or rejection, as well as reason for the rejection.  Buyer shall also record all shortages, overages, damage and/or rejection in writing on the Carrier Delivery Receipt.

5. All Seller-approved LTL carriers and truckload carriers will make delivery appointments as required.  Seller-approved small package carriers (i.e., RPS, FedEx, UPS) with shipments of under 200 pounds and/or protective service carriers regardless of weight will not make delivery appointments.  Seller will not be liable for any fees or chargebacks due to late arrival by a carrier.

7. Buyer shall accept delivery as soon as possible once delivery is available from carrier during Buyer's normal operating hours, but in no event more than twenty-four (24) hours after notice from carrier that delivery is available.  Buyer shall not request carrier to hold Product at carrier's terminal for later delivery ("trapping freight"), nor have Product dropped in carrier's trailer at Buyer's location for later unloading ("dropping/spotting trailers.  Any exceptions to the foregoing require Seller's prior written approval.

8. Seller's responsibility for freight costs terminates when carrier tenders the Product to Buyer at Buyer's dock.  Buyer shall be responsible for unloading the Product.  All expenses incurred after carrier's tender to Buyer, including sort and segregate activities and any other activities, whether or not involving carrier personnel, shall be at the sole expense of Buyer.

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel      302 886 3000
www.astrazeneca-us.com

AZPH1001  (01/00)

# EXHIBIT 3

# ASTRAZENECA

## EXPIRED RETURN GOODS POLICY
### *UPDATED as of March 2011*

### *PRODUCTS ELIGIBLE FOR RETURN*

- This Policy applies only to eligible products of Seller that have been sold directly by Seller, manufactured and/or distributed only by Seller in the United States and identified by the following NDC labeler codes:
  - **- 00310**
  - **- 00186**

- Expired product must be within six (6) months of expiration, but cannot be out of date by more than one (1) year.  Products that are outside of this eighteen (18) month window will not be credited.

### *PROCEDURE FOR RETURNING GOODS*

- All expired product must be sent directly to Stericycle Pharmaceutical Services, Indianapolis, IN. (1-877-546-8441). Expired product, which is sent to Stericycle Pharmaceutical Services, will only be received **Monday through Friday (except holidays)**. Stericycle will hereinafter be referred to as "Return Goods Processor".

- A Return Authorization form is required to be included with the return of eligible **EXPIRED PRODUCT**.  To obtain a Return Authorization form, please contact the Return Goods Processor, or access the form online at ExpertRETURN.com.

- Please ensure that the RGA Return Authorization form has the name, address, & DEA number of the indirect customer and/or the direct customer to be credited, and include a copy of the debit memo with the return.

### *SHIPPING*

- Eligible products shipped to Return Goods Processor are to be addressed and shipped to:

**Stericycle RMS**
**Dock 19**
**2670 Executive Drive**
**Indianapolis, IN 46241**
**(877) 546-8441**

- All eligible products shipped to Return Goods Processor are to be shipped in a safe, secure, and reliable manner, and in compliance with all applicable federal, state, and local laws, rules and regulations.

- Shipping charges for all shipments to Return Goods Processor are to be prepaid by Buyer or Buyer's customer. Seller is not obligated to pay for charges incurred by Buyer or Buyer's customer for return goods processing.

- Shipments sent COD (collect on delivery) will be refused by Return Goods Processor.

- Broken product containers/bottles, without product present, are NOT to be shipped to Return Goods Processor. If any are shipped to Return Goods Processor, they will be disposed of and will not be reported as a return. In the case where the Return Goods Processor may receive broken product containers/bottles where damage occurred during return shipment, the Return Goods Processor will accept damaged, broken, wet and/or leaking shipping containers. Such returns will be processed, but no credit will be issued. Seller's credit memo to Buyer will indicate no credit due to damaged container.

### *CREDIT FOR RETURNS*

- Credits will be issued to Buyer as provided below based on the current wholesale acquisition cost (WAC) less five percent (5%) of the merchandise returned, unless otherwise required by applicable law, or as communicated by Seller. With respect to direct contracted buyer, credit will be issued based on current contract price less five percent (5%) of the merchandise returned, unless otherwise required by applicable law.

- Credits will be determined on the basis of actual count. Credit will be issued for the actual amount of tablets/capsules returned in a given container. For example, if 15 tablets/capsules are returned in a 30-count bottle, credit will be issued for 15 tablets/capsules only. For liquid, syringe, and injectable products, credit will be issued only for sealed units of an inner pack. Credit will not be issued for any others.

- Seller requires all expired product to be returned to the Return Goods Processor and does not issue credit for "paper only returns."

- Returned quantities will be audited by Return Goods Processor, and final credit will be based on Return Goods Processor's count.

- Credit will be issued to wholesalers and/or other direct accounts. For indirect customers, credit will be issued through their wholesaler or direct account.

- Returned goods may not be exchanged for replacement merchandise.

- Products unacceptable for credit will not be returned to the Buyer. Those products will be destroyed. Buyer will receive notification for non-credited items.

### *PRODUCTS NOT ELIGIBLE FOR CREDIT:*

The following products are not eligible for credit:

- Product that is not out-of-date (see "Products Eligible for Return").

- Product that is not in original container. Seller will not issue credit for products returned in original containers with prescription labels attached. Seller will not issue credit for products returned in prescription containers. Seller will not issue credit for any repackaged product.

- Product that is over packed. Credit will be issued for only the specified amount of the original container quantity. For example, if 45 tablets are returned in a 30-count bottle, credit will be issued for 30 tablets only. The other 15 tablets will be destroyed, with no credit issued.

- Empty containers and/or containers with crushed or damaged product. For example, credit will not be issued for a return for remnants of crushed tablets in a container.

- Product in which the lot number and/or expiration date is missing, illegible, covered, and/or otherwise unreadable on original container.

- Product that is labeled as sample, free goods, or otherwise distributed at no charge.

- Product obtained illegally or via diverted means.

- Product that Seller deems, in its sole discretion, to be otherwise adulterated, misbranded, or counterfeit.

- Products damaged by fire, smoke, heat, or water resulting from fire or other insurable hazards are not returnable under this Policy.

- Distress merchandise, such as items purchased from bankruptcy sales, going-out-of-business sales, fire sales, or other merchandise generally considered under the classification "distress merchandise" is not returnable under this Policy.

### *DISCONTINUED PRODUCT*

- Discontinued product NDCs will be evaluated by Seller on a case-by-case basis for potential return prior to becoming expired.

*SELLER'S DISCLAIMERS*

- Seller is not responsible for shipments lost and/or damaged in transit.  It is recommended that all Buyers and/or their customers insure return goods shipments.

- Pharmaceutical Sales Specialists and/or other Sales personnel of Seller are not authorized to accept Return Goods.

- Seller can modify this policy at any time upon written notice.

*For purposes of this policy, references to Seller mean (a) AstraZeneca Pharmaceuticals LP ("AZPLP") as regards all goods or services identified by an AZPLP product code, labeler code or NDC number on the invoice or (b) AstraZeneca LP ("AZLP") as regards all goods or services identified by an AZLP product code, labeler code or NDC number on the invoice.  In the absence of a product code, labeler code or NDC number for a particular good or service, Seller shall mean either AZPLP or AZLP as expressly identified on the invoice as regards such goods or service.  For the purpose of this policy, reference to Buyer means a direct customer of AstraZeneca.*

AstraZeneca 

Exhibit 4

### CLAIMS MANAGEMENT PROCESSING

As set forth in Section III, Seller shall process and render disposition of Buyer's Claims within defined periods of time. Such disposition will be in the form of a credit memo or a notice of claim denial. The relevant time periods for Seller to process claim shall be as set forth below.

**CLAIMS MANAGEMENT Processing Windows**

| Claim Type | AZ Processing Window- Cal. Days | Returned Product | Debit Memo (DM) | Later of Return or DM | Other |
|---|---|---|---|---|---|
| Hospital Chargeback (HCB) | 10 | | X | | |
| Damage | 15 | | | X | |
| Shipping Error | | | | | |
|     Wrong Product | 15 | X | | | |
|     Overage (if returned) | 5 | (X) | | | N/A |
|     Over and Short | | | | | N/A |
| Pricing | 15 | | X | | |
| Shortage | 15 | | X | | |
| Return Goods (I.e. expired) | 25 | | | X | |
| HCB- Resubmission | 30 | | X | | |
| Recalls | | | | | |
|     Product Return | 25 | | | X | |
|     Recall Fees | 21 | | X | | |

Mail debit memos to: AstraZeneca Pharmaceuticals, Credit Services-A1C, P.O. Box 15437, Wilmington, DE, 19850-5437.
Or, e-mail to: creditservices.wilmington@astrazeneca.com

To verify Seller's receipt of a debit memo or inquire as to the status: call Customer Service at 302.886-8800, or 1-800-842-9920 (Option 1) or e-mail inquiry to:
cmp.wilmington@astrazeneca.com

Wholesale Distribution Agreement11.doc
**AstraZeneca Pharmaceuticals LP**
1800 Concord Pike  PO Box 15437  Wilmington DE 19850-5437

Tel    302 886 3090
www.astrazeneca-us.com

AZPH1001 (01/00)